JANE E. BLANDEN v. THE CITY OF FORT DODGE, Appellant.

**Highways:** MUNICIPAL CORPORATIONS. A city must exercise its power to lower the grade of a street in the manner prescribed by the statutes conferring such power and, when the street is cut down without conforming to such statutes, it is liable for any resulting injury to the abutting property owners.

SAME. A city cannot avoid liability to an abutting property owner for the removal of shade trees in the street in front of his property, on the ground that they were a nuisance and obstructed travel, where it assumed to act under invalid proceedings to establish a grade.

SAME. A municipal corporation can exercise its power to establish a street grade only by an ordinance or other legislative action.

SAME. A resolution of a city council "that a permanent grade be, and the same is, hereby established," on a certain street, "except where already established, and the committee on streets and alleys is hereby authorized to employ a competent engineer at once to establish said permanent grade as above described," is not an establishment of the grade, but is merely a provision for establishing it in the future.

ESTOPPEL OF OWNER. An abutting property owner is not estopped to complain of the lowering of a grade of the street and the removal and injury of shade trees in front of his premises, under invalid proceedings of the city council, because, with a view of saving the trees, he urged those in charge of the work to make as little cut in the street as possible, and to allow him to lower the trees.

*Appeal from Webster District Court.*—HON. B. P. BIRDSALL, Judge.

TUESDAY, MAY 25, 1897.

THE plaintiff is owner of lots 4 and 5, in block 11, of Ft. Dodge, Iowa, fronting to the north, on Central avenue, one hundred and twenty feet, and to the west, on Tenth street, one hundred and forty feet, on which has been erected a large dwelling house. No grade was established on either of these streets before October, 1892. Prior to October fourth of that year, the defendant excavated and removed the earth and trees from Central avenue in front of these lots, and about two-thirds across the lots on Tenth street, leaving the trees and sidewalk somewhat elevated above the level of Central avenue; and in the spring of 1893, Tenth street was dropped to the level of Central avenue. Plaintiff asks for damages on the ground that all this was done without the adoption of any resolution or ordinance as required by law. The defendant interposes four defenses: (1) A general denial; (2) that everything done was in pursuance of authority vested in the city, and was ordered by a unanimous vote of its council; (3) that all work complained of was done after July 5, 1892, by the street and alley committee, as directed by a unanimous vote of the city council, and whose report of its doings was approved by the council October 4, 1892, and an ordinance passed establishing a grade on such streets in conformity with the changes made; (4) that plaintiff is estopped from claiming damages, because all changes were made by reason of the request and consent of plaintiff, through her agent. Thereupon, plaintiff demurred to the second and third counts of the answer; the demurrer to the second count being overruled, and that to the third count being sustained; and only the latter ruling is complained of. The demurrer to the third count was, in substance, that the resolutions of July 5, 1892, and the ordinance of October 4, did not authorize or

approve the acts of defendant in removing the earth and trees.   There was trial to jury, verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Blake & Mitchell* and *Botsford, Healy & Healy* for appellant.

*R. M. Wright, Frank Farrell,* and *P. F. Nugent* for appellee.

LADD, J.—I.   Three resolutions were adopted July 5, 1892, by the unanimous vote of the city council. The first resolution orders a grade to· be established on Central avenue, and the committee on streets and alleys is authorized to employ a competent engineer to establish such grade.   The second and third resolutions provide that Central avenue shall be guttered and curbed on both sides, and a sidewalk laid, at the expense of the abutting property owners.   The first resolution is relied on, but can only be construed as directing a survey and measurements preparatory to the establishment of the grade.   The part of the resolution involved is:  "That a permanent grade be, and the same is hereby, established on Market street in said city, except where already established; and the committee on streets and alleys is hereby authorized to employ a competent engineer at once to establish said permanent grade as above described."   Market street is now Central avenue.   Under the ruling in *Kepple v. City of Keokuk,* 61 Iowa, 653 (17 N. W. Rep. 140), such a grade can only be established by an ordinance or other legislative action.  ·It is there said:  "Establishing a grade does not mean the actual lowering or raising of the surface of the street.   It means the fixing of a base line, or plane of reference, and certain measurements from that plane.  .* * * We think

the establishment of a grade means the passing of an ordinance, or other legislative action of the council of the city, prescribing and fixing grade lines to which the surface shall be brought when the street shall be improved." The resolution simply provides that such grade shall be established in the future, and the only authority given the street and alley committee is the employment of a competent engineer to make the survey and measurements, necessary for the accomplishment of such purpose. The ordinance of October 4 establishes the grade provided for in this resolution. No order was made by ordinance or otherwise requiring the raising or lowering of the streets, or the removal of the earth or trees. This could only be done when directed by an affirmative vote of two-thirds of the city council. Code, section 465. The city must exercise its power in the manner prescribed by the statutes, and when a street is cut down without so doing, it is liable for the injury, if any, resulting to the abutting property owners. *Trustees of Diocese of Iowa v. City of Anamosa,* 76 Iowa, 538; *Meinzer v. City of Racine,* 74 Wis. 166. The demurrer to the third count was properly sustained.

II. Ordinances passed by the city in 1869 and 1873 prohibited the planting of trees where those of plaintiff were growing. The court directed the jury to take into consideration the removal of the trees if planted before that time, but not to do so if planted thereafter. Appellant says that there is no testimony upon which to submit whether the trees were planted before the ordinance of 1873. Berry, the son of plaintiff, says they were planted in 1875. Kirchner testified he had passed the premises every day since 1866, and thought the trees were planted in 1868. The question, then, was properly submitted. It is also insisted that the city had the right to remove

the trees because they were a nuisance, and obstructing travel; but they were not removed for this reason, and there is no evidence tending to show that they in any way obstructed travel, or interfered with the proper use of the streets.

III. The defendant pleaded an estoppel based upon conversations between the members of the city council and Colonel Blanden, husband and agent of plaintiff, on the ground that the improvements were made by reason of his request and consent. The record fails to show any request for the making of the improvements, or consent that they should be made. It does show, however, that Colonel Blanden was very anxious to avoid the destruction of the shade trees growing on the west and north of the lots. He consulted with the members of the city council with this end in view, and urged them to make as little cut in the street as possible, and allow him to lower the trees. When given to understand that he must either lower those on the north, or they would be taken out after examining them he said, "Take them out." He indicated that he could stand a cut of two or two and one-half feet, but that made was much more. He asked that Tenth street be not cut down till spring, so that he might lower the trees there after the ground had frozen, and that, to enable him to do this, the work, when done, be completed at one time. At another time, when the work was being done, he said, being spoken to about an injunction: "Go on, and do the best you can; that's all. When I get ready to serve an injunction, you will know it." The connection in which this language was used is not shown, but, when considered with the other evidence, it can only be understood as meaning that he desired them to do the best for him they could, for this was what he was striving for at all times. The evidence conclusively shows that he did

no more at any time than to express a choice or election as to methods in doing the work. It utterly fails to show that the .excavations were made on the strength of any request or consent of Colonel Blanden. The court rightly withdrew this evidence from the consideration of the jury, and refused to submit the issue of estoppel.

IV. Ordinance No. 165, adopted in June, 1892, did not repeal ordinance No. 20, prohibiting trees outside the curb line, or more than one foot from the curb line in the inside. The space between the outside of the sidewalk and the curb line might be graded and parked as provided in the former ordinance, but in doing so trees can only be planted within one foot from the curb line.—AFFIRMED.